And it's Thomas v. Anderson, and good morning. Good morning, Your Honor. May it please the Court, Remy Jaffray appearing on behalf of Mr. Thomas, and I urge this Court to reverse the judgment of the District Court below. In this lawsuit, Mr. Thomas brought excessive force in First Amendment retaliation claims that survived all the way to trial. At that point, the District Court had a duty to ensure that Mr. Thomas, as an unrepresented litigant, got a fair opportunity to present those claims to a jury. But the District Court in this case did not fulfill that duty, and instead, in its efforts to manage the case, it made a series of erroneous rulings that deeply prejudiced Mr. Thomas and deprived him of a full and fair hearing. And I'd like to focus on the following four errors made by the District Court. First, the District Court excluded a broad category of directly relevant testimony. Second, the District Court excluded two inmate witnesses on impermissible grounds. Third, the District Court disregarded Mr. Thomas' own testimony when it granted partial judgment as a matter of law to the defendants. And finally, the District Court completely failed to rule on Mr. Thomas' last two requests to recruit pro bono counsel. And I'd like to start with the exclusion of testimony issue. The District Court refused to allow any testimony relating to any events before March 24, 2011, which is the day that Mr. Thomas alleges that the defendants beat him up and filed false disciplinary charges against him. The District Court took the position that that testimony was irrelevant, but it was in fact relevant to Mr. Thomas' claims. And one category of pre-March 24 testimony in particular would have been relevant. Well, now, would Luis Gonzalez and Keontae Simmons have testified to Anderson's threats, as Thomas asserts? That is what Mr. Thomas believed. As he repeatedly informed the District Court, he was unable to communicate with most of his potential witnesses because of prison regulations that forbid inmates from communicating with releasees or inmates at other facilities, so he could not be sure that that's what they would testify to. But his understanding was that they had knowledge of those threats. Yeah, it appears as if Thomas would have been able to communicate with potential inmate witnesses if he'd sought the prior approval of the Chief Administrative Officer. Did he seek that approval? Was it denied? What's the story? Your Honor, it's not in the record, but when I spoke to him a couple of days ago, he told me that he did try. He wrote the warden to try to get approval and that he never got an answer. But it's not in the record. It's not in the record. But the defendants never dispute his claim that he was not able to communicate with these witnesses. They didn't dispute that before the District Court, and they haven't disputed it in their brief in this court. So the threat evidence would have been relevant for two reasons. First, it would have been relevant to proving Anderson's retaliatory intent. If he had told Thomas in the past that he was going to retaliate against him. I'm going to interrupt you here for a minute because our time is limited, and the point of the interruption is to make the obvious point that the trial court's time is also limited. And these cases are not the prisoner's opportunity to command maximum resources of the District Court. And I was struck by the amount of time that the District Court invested in this case and the careful attention that he paid to the scope of the trial and listening to both sides about what the issues that necessitated a trial actually were. And so the temporal limitation that the judge put on the scope of the proofs in the case, limited to this incident on March 24, 2011, plus the stipulation that Thomas had filed multiple grievances against Anderson and others, was enough to fairly present the case to the jury. And your client had corroborating witnesses, at least one corroborating witness that he was allowed to present, and that seems to me a quite fair restriction on the scope of this trial. So several responses, Your Honor. First of all, in terms of the corroborating witness, as you're aware, the witness was not able, in fact, to remember the events. Obviously, the District Court has discretion to try to manage a case and to streamline it for trial. But in this case, the absence of corroboration was hugely prejudicial to Mr. Thomas. It's something that the defendants returned to multiple times during their closing arguments. And given how important it was for Mr. Thomas to be able to corroborate his testimony, the District Court should not have required him to choose ahead of time between two witnesses, neither of whom he'd had the opportunity to speak with before trial. In a way, the situation the District Court found itself in was a function of its refusal to appoint counsel for Mr. Thomas. If it had appointed counsel for him, counsel would have been able to speak. Now, Mr. Thomas is a very experienced litigator. He knew what he was doing. He knew how to present a case. Sure. And it's not a complicated case. A litigant's competence to try a case isn't determined solely with respect to his personal capacities or his writing ability or his knowledge of the law. For example, in the Santiago case and the Navajar case, this court found that the District Court abused its discretion by failing to consider that the litigant was able to conduct discovery or to gather evidence. Those were medical cases, were they not? Yes, they were, Your Honor. Okay. This is different. This is a straightforward excessive force allegation and retaliation allegation. What do we know about the nature of his injuries from the incident? Does the record contain medical records documenting the injuries? Yes. He did have a black eye. That is in the record. And there was testimony from one of the witnesses that he did have a black eye. So there is evidence in the record that he suffered an injury. And to the extent that Mr. Mills, the corroborating witnesses, did corroborate his testimony, he was able to say that Mr. Thomas was thrown against the glass, which the District Court discounted a few minutes later by saying he didn't remember that such testimony had happened. So that was another reason why Mr. Thomas wasn't able to corroborate his testimony. So the jury heard that testimony, right? Yes, they did, Your Honor. I'm not sure I understand your last point. So Mr. Mills, the witness, said that he remembered an inmate being thrown against the glass. Then a few seconds later, the District Court said, I don't remember any testimony about anyone being thrown against the wall. In front of the jury? In front of the jury, yes. This was after Mr. Thomas tried to summarize Mills' testimony as part of another question. I assume the jury got the customary instruction that only what the witnesses say from the stand is evidence, nothing the lawyers say, nothing the judge says is evidence. Yes. No harm, no foul. Sure. So I guess I'd like to talk a little bit about the exclusion of Landers and Simmons on videoconferencing grounds. So the District Court excluded both of these witnesses because it stated that there was no videoconferencing available at the facilities where they were located. That is an impermissible ground for excluding a witness. Another harmless error, the other rationale for excluding them was that one would have been irrelevant and the other would have been cumulative. Well, so Your Honor, as I just said, in terms of the exclusion of Landers, it was premature for the District Court to exclude him before Mills had even testified. I believe that it's- No, that's not how these motions are handled. The judge has to make a decision before trial about who to bring in. Your Honor, the defendants were allowed to, during voir dire, when they were asked to tell the jury what witnesses they were planning to call, they listed no fewer than 21 witnesses. The defendants were given a lot of leeway to keep a lot of witnesses on their witness list before trial started. They simply just didn't call all of them when they realized that they didn't need them. The District Court could easily have kept Landers on the witness list and made him available for trial and simply not call him if it turned out that Mills testified the way Mr. Thomas expected him to. That was not a huge imposition on the District Court's time or resources. And as to Mr. Simmons, as I explained, the threat evidence relating to Anderson was relevant, and the stipulation into which the parties entered was not sufficient to give the jury a full picture. The stipulation specified at the end that the jury should not infer that any of Mr. Thomas' grievances, including his grievances about Anderson, were meritorious. And then the defense counsel in closing argument seized on this by trying to characterize Mr. Thomas as a serial complainer, an inmate who thinks he knows the rules of the institution better than the prison does. So in this context, the fact that Mr. Thomas was not able to present evidence that he was in fact harassed and he was in fact threatened before by Mr. Anderson was prejudicial for him. And then I'd like also to discuss briefly the Rule 50 issue. The District Court granted partial judgment as a matter of law to the defendants, to four of the defendants, and every time it gave the same reason, and that was that there was no evidence of retaliatory intent and no evidence that any of the four defendants in question knew about Mr. Thomas' First Amendment activity. But in each of those cases, Mr. Thomas himself provided testimony that the defendants knew about his First Amendment activity and that they were motivated by it. What the District Court essentially did is either disregarded Mr. Thomas' own testimony, which it was not entitled to do, or it viewed the testimony in the light most favorable to the defendants, which it was not entitled to do, or it made a credibility determination. But it should have left that determination to the jury. Was that true with respect to Sanders, the second officer who adjudicated the grievance? Yes. He was complaining, he was saying that his hands were tied because of his retirement, or words to that effect. There was testimony to that effect, but there was also testimony that Sanders knew about Mr. Thomas' First Amendment activity. That was Thomas' own testimony? That's right, Your Honor. In each of these cases, Thomas himself testified that. And what was the basis for that testimony about Sanders? Not Bailey. He testified that Bailey made a statement about, you know, you shouldn't have made all those complaints. In Sanders' presence. Is that what he testified? That's right. Sanders was there and heard that? Yes, that was at the hearing when his disciplinary charges were heard. And I think it's important to note that the defendants never questioned that this was sufficient testimony to go to the jury on this issue. Instead, what they do is seek to provide alternative bases for affirming the district court here. But none of those bases have any merit. For example, for Anderson, the defendants argue that he did not, in fact, write the ticket. But we cite cases in our brief, for example, the Wesby case and the cases cited at the same place, which show that a defendant doesn't have to metaphorically be the one who pulls the trigger to be a liable under Section 1983. Here, Mr. Thomas testified that Anderson told Cochran, the other defendant, to write the ticket, and also that Anderson was involved in quote-unquote setting Mr. Thomas up to make it possible for Cochran to have a pretext to write the ticket. And I think under these cases, it's clear that that's sufficient involvement to be liable under Section 1983. Finally, just briefly, the district court completely failed to rule on Mr. Thomas' last two requests for recruitment of pro bono counsel. Under the Childress case, that is in and of itself an abuse of discretion. And in the DeWitt case, this court held that the district court should have ruled on a request, on a recruitment request, even though it was not styled as a recruitment request as was the case here. The two recruitment requests in question are in the separate appendix. If you want to take a look at them, they're very clear that that is what Mr. Thomas is requesting. And the district court clearly abused its discretion by simply failing to rule on those requests. They were contained in Mr. Thomas' pleadings that had to do with compliance with the court's order to narrow his witness list. That's right, Your Honor. And they were kind of buried in that. Well, it's the... And stated in terms of, you know, the court may want to revisit my request for counsel because I'm having trouble with these witnesses. That's right, Your Honor. And they are at... The specific requests in question are at pages 28 and then 42 and 43 of the separate appendix if you want to take a look at what they were. Thank you. May it please the court. I am Assistant Attorney General Linda Boachiansaw on behalf of the defendants. An abuse of discretion is much more than a simple disagreement with how the district court resolved an issue. And it's much more than a preference for the court to have ruled in a party's favor. Instead, an abuse of discretion occurs when the district court commits a serious error of judgment so that no reasonable person could agree with its decisions. Do you prefer to be called Ms. Boachiansaw or Ms. Ansahau? Boachiansaw. Okay. I must tell you, I was somewhat surprised by the state's claim that a writ of habeas corpus attestificandum is relevant only in a habeas corpus action. Is the state contending that there is some other way to secure the presence of an inmate witness in court for any kind of trial? And, you know, if so, what would that be? Because I'm very troubled that the court excluded witnesses solely because there was no video conferencing available at the prisons. Your Honor, our contention is that a district court is required to issue subpoenas for indigent parties in criminal proceedings and in civil proceedings for a writ of habeas corpus pursuant to Section 2255. And, in fact, in the Stone case, which Thomas relies heavily on, the question was whether the inmate himself, the plaintiff inmate himself, was permitted to testify at his own trial. And this court noted that even the prisoner does not have a constitutional right to present live testimony at his own civil trial, rather. So, in Stone, the court set forth different factors that judges should consider when determining whether to secure the inmate plaintiff's testimony at his own trial. But this court reiterated that it's a discretionary decision. Now, would the State concede that threats made by Anderson prior to March 24, 2011, are relevant to prove Anderson's intent on March 24, 2011? The Court's refusal to admit any, any evidence prior to that date is terribly overbroad, as far as I am concerned. Your Honor, it's certainly, it's a, it's a discretionary decision that the court made. And, you know, reasonable judges could rule otherwise. But the standard is whether any reasonable person could agree with the decision that the court made. And in this case, you know, Your Honors, this court has instructed district judges to use their authority under Federal Rule of Evidence 403 to keep the trial within sensible bounds. So, at the time of this trial… Sensible bounds? Yes. Like one witness on one side and 21 possible on the other? Does that seem weighted to you somehow? Your Honor, as the record demonstrates that Thomas had many more than just one witness. He was able to present numerous witnesses at trial. And, you know, the court also recognized that a part of his showing for the First Amendment retaliation claims were these alleged threats. But the court also recognized that Anderson disputed having made those threats. Well, look, you know, the State has asserted throughout that Anderson's prior threats against Thomas are irrelevant. But Thomas was required to prove that Anderson's actions were in retaliation for Thomas's exercise of First Amendment rights. Why wouldn't it be relevant that Anderson had previously expressed displeasure with Thomas's frequent grievances and complaints? What could be more directly relevant to a central issue and dispute? Your Honor, this court has noted that even relevant evidence can be excluded when, as the district court concluded here, its probative value was substantially outweighed by risk of confusion of the issues, undue prejudice, etc. Do you know what that rule is called? The judge's best friend. Rule 403. It's used very liberally in this case. It is, or perhaps, I should say. You know, but the district court can exclude otherwise relevant evidence under these circumstances. In this case, the judge made a judgment call about whether the testimony and the grievances about these alleged prior threats were out of bounds. And this court treats such determinations with great deference and will affirm unless the record contains no evidence on which the district judge rationally could have based his decision. The judge also, Your Honors, reasonably exercised its discretion to remove Simmons and Landers from the proposed witness list. So the backdrop for the court's decision to exclude their testimony was that Thomas had proposed calling a considerable number of witnesses at trial, 42 reduced to 25 reduced to 18. This court has observed that district judges must have the power to limit the number of witnesses that a party can present at trial. Otherwise, some trials would go on forever. Well, what's more, 21 or 18? Sorry? How much is more, 21 or 18? 21. Okay. But the defendants didn't call 21. Oh, but they had the opportunity to. The record shows that the district court recognizes Thomas' right to call inmate as witnesses and to subpoena parolees. And again, the record shows that he had many witnesses at trial. But the court wanted to avoid cumulative testimony, so it asked Thomas several times what he expected each witness to testify about. Of course, he'd been unable to talk to the witnesses. Pretty hard to do that with your hands tied behind your back that way. Your Honor, presumably he had some reason for naming them as witnesses. So he expected that they had seen something and Boy, if we ran our civil trials like that, this would be quite a system, wouldn't it? Your Honor, based on his description of their expected testimony, many of them would be testifying to the same thing. And it's within the court's discretion not to allow duplicate testimony. He allowed no testimony, basically. What duplicate? Where do we have any duplicates here? Your Honor, at the July 8, 2015 pretrial conference, Thomas told the court that he expected Baird, Mills, and Landers to testify that they all saw the excessive force that was used against him. And Thomas actually thought that Mills was in the best position to see what happened. In response, the court stated that three people didn't need to testify to the same thing. That's not an unreasonable position for the court to take, particularly in light of the difficulty that the parties had. I don't know about that. You know, one is here, one is there. The record's not going to show that my hand is going out here or my hand's going up there. They're in different positions to see different things, just like an accident case. Your Honor, even if the court somehow erred in removing Simmons and Landers from the proposed witness list, an error in preventing a witness from testifying at trial doesn't automatically entitle a party to a new trial. This court applies a harmless error rule that depends on what information the witness would have placed before the jury. According to Thomas, Simmons would have testified about the alleged threats, but the court had already exercised its discretion to exclude those allegations, so Simmons' absence from trial was harmless. You know, the State has argued that Cochran would have written a disciplinary ticket apart from any retaliation because Thomas was not at his cell after lockup was announced. But if Thomas' version of events is correct, the officers made sure that Thomas couldn't reach his cell in time to comply with the order, you know, calling times up eight minutes before while the guy is wet in the shower. And the defendants knew that when they issued the order, they knew that. So I guess my question is, are guards allowed to issue orders that are impossible for inmates to comply with and then ticket them for disobeying the order? I think it's a very strange argument in light of the conflicting testimony at trial. Your Honor, Thomas stated that inmates generally were required to lock up at 9.15 a.m., but he also acknowledged that the officers could order a lockup for other reasons. For example, if there were some sort of incident at the prison, he testified that they, you know, saw him in the shower and called lockup, but he examined the defendants at trial and never asked why they called lockup at the time that they did. He also presented no evidence that they called an early lockup for improper purposes. He's speculating that they did so to retaliate against him, but there's no evidence to that effect. One reason there's no evidence is that the judge didn't let in any, didn't allow the witness who would have given this evidence. We are in a catch, what is that, a catch 22, a catch 36. We're in a catch case here, you see, to my way of seeing it. Your Honor, of the 42 or some odd witnesses that he sought to present at trial, I don't believe any of them would have testified about the reasons why defendants called an early lockup. And I don't think they actually could have testified about that because they don't know. Only defendants know why they called lockup at the time that they did, and Thomas never asked them about that. So we can't assume, given that silence, that there was some improper purpose for calling a lockup. And I think under even Thomas's version of the facts, he didn't make it back on time. And so there was a proper basis for them to issue being late for lockup is a proper ground. He explained that he was running as fast as he could, wet from the shower. He did get into that cell in time. He got in. Yeah, he says that he got in. And did anyone say he didn't get in in time? Yes, the defendants. And I do understand that. I understand your position, Your Honor. But given the fact that there's no evidence of any retaliatory motive in their calling the lockup at the time that they did, and the fact that, you know, it's questionable whether he made it back on time. There's just not enough for a reasonable jury to find. There's no circumstantial evidence that Thomas himself testified to. Your Honor, this court in Green v. Doroff has stated that there are cases where the alleged retaliation as a motivating factor is so weak that although it's in the picture, the retaliatory intent has no actual causal force. And we would submit that this is such a case. Wasn't there a jury question on that issue, though? I am somewhat troubled by the judge's decision to take that issue from the jury, which is subject to a different standard of review than the limitation on the scope of the proofs. Thomas said this was a pretext to set him up, essentially, for a disciplinary charge, that the three officers saw him in the shower, knew that he was going to be unable to or that it would be difficult for him to make it back to his cell if they called an immediate lockup ahead of the scheduled one. And there was nothing he could do. That seems to me to be a factual question for the jury to decide, rather than an absence of proof. Motive always has to be inferred. You're never going to have direct evidence of it, or rarely. Isn't it a logical inference from his testimony that they were motivated by retaliatory intent? That could be inferred. So it shouldn't have been taken from the jury? Yes. In our view, the evidence wasn't strong enough to go to the jury. But if this court disagrees and thinks that this evidence was sufficient for a reasonable jury to rule in his favor, then we would ask for a limited remand on that issue alone. But we'd ask this court to otherwise affirm. How could we do that? What did he say? A limited reversal on one issue. Oh, my God. Let me tell you, you know, why I'm upset here. I read the trial transcript. When you do, you see that the court regularly ruled against Thomas before the defendants even registered an objection. They weren't even registering objections. Look, maybe Thomas was an irritating litigant, but that's why we're here, we judges. Not to deal with the lovely people like you and your opponent and everyone else in this courtroom, but to be able to deal with the people that might not be as lovely. I mean, when do judges start to constantly rule before there's an objection? I found that so unsettling. Your Honor, my review of the trial transcript was different. As I read the trial transcript, the judge endeavored to be fair to both sides, and its rulings were proper. So with respect to the recruitment of counsel issue, the district court conducted the analysis that's required by Pruitt, and it was well within the court's discretion not to recruit counsel for Thomas because he demonstrated a capacity to coherently present his case to the jury. You know, I'm kind of interested in what you said about the different way that we read the transcript, because in my reading, the state's defense of the district court's rulings is often half-hearted. Your Honor, I think that the district court, as I said, by and large conducted a very fair trial, and I don't see an abuse of discretion in any of the decisions that the court made. Well, let me tell you where I see errors. In the courts forbidding Thomas from using any evidence prior to March 24th, 2011, which many could not present witnesses who heard or allegedly heard Anderson repeatedly threaten him for filing grievances. Secondly, for refusing to allow inmate witnesses to testify unless they were housed at facilities that had video capability, and applying the wrong standard, by the way, when deciding this issue. Number three, applying the wrong standards when deciding whether to appoint counsel, and the failure to even act on the last two requests as trial approached, and the need for counsel became ever more clear, and granting directed verdicts for several defendants on several claims when the evidence showed contested issues of fact. It's a mess. It's a mess. Your Honor, responding to the trial, or rather recruitment of counsel issue, as this court is well aware, there are many, many incarcerated pro se civil plaintiffs, and there are not enough lawyers to represent them. So the district court has to make choices about which pro se plaintiff needs counsel the most. In this case, this is not a case that turned on complex medical evidence. The legal issues were not particularly complicated, and the factual disputes were not complicated. Thomas doesn't argue that he lacked competence to present his case. He simply points to various challenges that he faced because he's a prisoner, but this court has noted that all inmates face challenges conducting discovery, and if that were the basis for recruiting counsel, then it would be required in all civil cases, and that is not the law. The fact that a case is going to trial also doesn't obligate a district court to recruit counsel for a litigant. The language of section 1915E1 doesn't suggest a congressional preference for recruitment of counsel in any particular circumstance. Whether a case is going to trial is another factor that a court can consider, but the court determined that it was not necessary in this case. You know, Thomas doesn't dispute his competence, and the record shows that he presented a very spirited defense of his positions at trial and at the pretrial conference. With respect to the court not recognizing that the notices of compliance contain within them requests for recruited counsel, this court in Pruitt said that a district judge has no obligation to reconsider the denial of an earlier request for a recruited lawyer. The court can consider it, but it's not required to, even if the plaintiff ultimately proves himself to be incompetent, which is not the case here. With regard to turning back to the question about the exclusion of the alleged prior threats, the court entered in a stipulation which informed the jury that Thomas had made many, many complaints about Anderson, about those alleged threats, and the jury was presented with that stipulation, and they were entitled to consider it as part of the evidence that was presented. But the jury had no idea of how those were resolved. They were resolved against Mr. Thomas, so that wouldn't have helped us. Perhaps that, you know, maybe that should have been, he just was keeping everything out. Anyway, thank you so much. Thank you, Your Honors. We ask this court to affirm. Thank you. And, yeah. Mr. Jeffrey, you have four minutes and 19 seconds. We now have a clock in front of us that is flashing. It's very disconcerting, actually. I find it pretty helpful. Do you? Yes. You have it, too, on that side? Yes, right here. Oh, okay. Yes, thank you. See, I went away for a few days. They redesigned the whole place. Just what do you think you got at the lake? On the rat race, they're running faster rats.  First, my adversary repeatedly invokes the standard of review, which is abuse of discretion. However, our argument is that in each of these cases, the district court made a legal error that tainted its discretionary analysis. In the pre-March 24 evidence issue, the district court took the position that this evidence was simply not relevant, when in fact, as we argue in our brief, it was relevant, and that tainted its Rule 403 balancing analysis. In terms of Landers and Simmons, it didn't apply the Stone factors, and with respect to the failure to rule on the recruitment requests, that is in and of itself an abuse of discretion under the Child Risk case. Does Stone apply in the 1983 context of prison litigation, conditions of confinement litigation? Yes, Your Honor. It applies in the civil context, and I believe that it's- I'm not talking about civil habeas. I'm talking about Section 1983 conditions of confinement, claims like this one. I believe so, Your Honor. I don't have a case. You don't think so? Well, Your Honor, if you disagree with that, I would request the opportunity to make an extra filing with the court. That is always granted. Thank you, Your Honor. Or almost always. And then I'd like also to emphasize that- So also, my adversary suggested that there was insufficient evidence of the defendant's retaliatory intent at the March 24- during the March 24 events. Mr. Thomas testified, for instance, that Anders told him while he was trying to get back to his cell or when he was about to have his disciplinary ticket written, you should have thought about that before you made all of your complaints about me and filing grievances about me in the prison. He testified that Cochran stated he didn't like inmates who tried to get staff in trouble. That's pretty clear evidence, if believed, of retaliatory intent. And then just the last point. A lot of the problems that the district court had in terms of streamlining the trial, streamlining the number of witnesses, timing, and so on, could have been alleviated if the district court had appointed competent counsel. Since the district court declined to appoint counsel for Mr. Thomas for the trial phase, despite his request to do so, the district court could not simply rely on the same case management methods that it would have used in a case where both sides were represented. And if this court has no further questions, I urge you to reverse the judgment of the district court. Thank you. Now, you were appointed by the court. You took the case on a pro bono basis, and the court is very grateful for your fine representation of your client, and you were terrific, too. Well, thank you. Thank you. Case will be taken under advisement.